UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

EUGENE SIDNEY,

Plaintiff,

-v.-                                                              9:09-CV-1326
                                                                   (GTS/ATB)

BRIAN S. FISCHER, *et al.,*

Defendants.

EUGENE SIDNEY, 09-A-0600, Plaintiff, *pro se*
CHRISTOPHER W. HALL, Assistant Attorney General, for Defendants

ANDREW T. BAXTER, United States Magistrate Judge

### REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation by the

Honorable Glenn T. Suddaby, United States District Judge, pursuant to 28 U.S.C.

§ 636(b) and Local Rules N.D.N.Y. 72.3(c).

Judge Suddaby's December 6, 2010 filing order liberally[1] interpreted plaintiff's

Amended Complaint ("AC," Dkt. No. 15) as asserting the following claims against six

---

[1] The court is required to read a pro se party's papers liberally, and to interpret them to raise the strongest arguments that they suggest. *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994). The Second Circuit has stated that "[i]mplicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983). The amended complaint in this case is very difficult to understand. The extremely liberal interpretation of this pleading was for the purpose of allowing the amended complaint to be filed and served. This interpretation of plaintiff's claims has not necessarily survived based upon a closer review of the amended complaint, together with additional information obtained from the parties in their moving papers.

employees of the New York Department of Correctional Services ("DOCS"):[2] (1) a retaliation claim under the First Amendment; (2) an access-to-courts claim under the First Amendment; (3) a free-flow-of-mail claim under the First Amendment; (4) a claim of inadequate prison conditions under the Eighth Amendment; (5) a due process claim relating to the filing of false misbehavior reports and the imposition of sanctions against the plaintiff under the Fourteenth Amendment; and (6) a conspiracy claim under 42 U.S.C. § 1983. (Dkt. No. 29 at 6).[3]  Plaintiff seeks $150 million in damages, plus costs and disbursements. (AC ¶ 9, Dkt. No. 15 at 13)[4].

On February 11, 2011, defendants made a motion to dismiss the action based upon 28 U.S.C. § 1915(g),[5] arguing that plaintiff had accumulated "three-strikes," that his *in forma pauperis* status should be revoked, and he should be made to pay the court's filing fee in full or have his case dismissed. (Dkt. No. 53)  On August 8, 2011, I issued a Report-Recommendation in which I found that plaintiff had accumulated only two "strikes" and recommended that the motion to dismiss be denied and that the

---

[2] On April 1, 2011, DOCS and the New York State Division of Parole were merged into one agency, named the New York State Department of Corrections and Community Supervision. Because the events relevant to this suit occurred before the merger, I will refer to New York State's corrections agency as "DOCS."

[3] As I stated in my August 8, 2011 Report-Recommendation, Judge Suddaby's Memorandum-Decision and Order dated December 16, 2010 summarized the procedural history of this case and interpreted the allegations of the Second Amended Complaint. (Dkt. No. 29 at 2-3, 4-6)

[4] The page numbers are those assigned by the court's electronic filing system, CM/ECF.

[5] The "three strikes" section of the Prison Litigation Reform Act (PLRA) prohibits the filing of an action *in forma pauperis* when the plaintiff has had federal actions or appeals dismissed on at least three prior occasions, either for failure to state a claim or for frivolousness. 28 U.S.C. § 1915(g).

case proceed. (Dkt. No. 87).  Judge Suddaby adopted my recommendation in its entirety and denied defendants' motion. (Dkt. No. 98).

Presently before the court is the defendants' motion to dismiss and for summary judgment pursuant to Fed. R. Civ. P. 12(b)(6) and 56. (Dkt. No. 100).  Plaintiff has responded in opposition to the motion,[6] and defendants have filed a reply. (Dkt. Nos. 106, 108).  For the following reasons, this court agrees with defendants and will recommend dismissing the plaintiff's complaint in its entirety.

## DISCUSSION

## I.   Facts

The various court decisions in this case have outlined how the court has interpreted plaintiff's claims, based upon the vague and rambling factual statements contained in his amended complaint. (Dkt. Nos. 12 (conditional dismissal); 29 (filing order after Amended Complaint); 87 (Report-Rec. discussing Three Strikes Motion); 98 (Mem. Dec. & Order)).  For purposes of this recommendation, the court assumes

---

[6] Plaintiff's response to defendants' motion mentions a variety of different issues, many of which were not in the original complaint.  Plaintiff has also filed a large number of exhibits, some of which are relevant to the original claims.  Defendants limited themselves to a reply covering matters that were in their motion and discussed plaintiff's response to the extent that it covered relevant material and included exhibits that address the original claims. While plaintiff could have made a motion to amend in response to the motion to dismiss, plaintiff cannot raise completely new claims in a response to a summary judgment motion. *See Hristov v. Roark*, No. 09-CV-2731, 2011 WL 4711885, at *12 (E.D.N.Y. Sept. 30, 2011) (citations omitted); *Torres v. Carry*, No. 08 Civ. 8967, 2011 WL 3444340, at *7 (S.D.N.Y. Aug. 4, 2011) (plaintiff may not raise new claims in response to a summary judgment motion); *Hawana v. City of New York*, 230 F. Supp. 2d 518, 534 (S.D.N.Y. 2002) (same) (citing *McCallister v. New York City Police Dep't*, 49 F. Supp. 2d 688, 698 (S.D.N.Y. 1999) (collecting cases)).  To the extent that the new claims could be construed as a motion to amend, the court finds that any amendment would be futile. *See Mackensworth v. S.S. American Merchant*, 28 F.3d 246, 251 (2d Cir. 1994) (motion to amend may be denied if the proposed amendment is futile).

familiarity with the prior statements of fact, and will highlight the essence of plaintiff's claims.

Plaintiff admits that on May 30, 2008, he was given a "negative correspondence list" by Correction Counselor John McGregor at Wende Correctional Facility. (Def.s' Stmt. of Material Facts ¶ 1, Plf.'s Resp. ¶ 1; Caron[7] Aff. ¶ 4 & Ex. A) (Dkt. Nos. 100-1, 100-3, 106-2).  The document *clearly* states that plaintiff must discontinue corresponding with Ms. Vickie McDonald.[8] (Caron Aff. ¶ 6 & Ex. A).  Plaintiff's signature appears on the document, and the form states that, in addition to being served on the inmate, it was also being placed in plaintiff's guidance and counseling unit case file. (Caron Aff. Ex. A).  All of plaintiff's claims in this action appear to have resulted from this negative correspondence list.

After plaintiff received this document, he was transferred to Upstate Correctional Facility.  Apparently, plaintiff still attempted to contact Ms. McDonald. Between August 3, 2009 and March 17, 2010, defendant Caron wrote at least thirteen misbehavior reports against plaintiff for violating the prohibition stated on the negative correspondence list.[9]  Plaintiff claims that Ms. McDonald is his wife, and that she never called to complain about receiving communications from plaintiff.  Plaintiff now claims that some "impostor" must have called the facilities to complain, causing

---

[7] The affidavit is submitted by defendant Trudy-Lynn Caron, Correction Counselor at Upstate Correctional Facility. (Caron Aff. ¶ 1) (Dkt. No. 100-3).

[8] The form contains Ms. McDonald's address and telephone number. (Caron Aff. Ex. A).

[9] There appears to be at least one more misbehavior report issued by defendant Caron, as will be discussed below.

4

plaintiff to be improperly disciplined.  Plaintiff alleges that he has challenged this prohibition by filing two grievances, one dated August 24, 2009 (filed September 1, 2009)[10] and another dated September 14, 2009.  However, plaintiff claims that his September 14, 2009 grievance was "mysteriously pilfered." (AC at p.2).

Defendant Caron has attached thirteen misbehavior reports that she issued to plaintiff as Exhibit B to her affidavit. (Caron Aff. Ex. B).  Plaintiff submits as an exhibit to his response, a disciplinary disposition, dated September 18, 2009, in which Hearing Officer Laramay found plaintiff "not guilty" of the correspondence violations charged by defendant Caron.[11] (Dkt. No. 106-3 at p.5).  The disposition states that there was insufficient documentary evidence showing the identity of the "civilian complainant," identified as the plaintiff's wife. *Id.*  The evidence relied upon was listed as defendant Caron's "report" and "associated departmental documentation." *Id.*  Plaintiff argues that because Hearing Officer Laramay found plaintiff innocent of the charges on September 18, 2009, none of the misbehavior reports may be sustained.[12]

Plaintiff alleges that, after some of the other disciplinary hearings, he was

---

[10] The court will refer to this grievance as the September 1, 2009 grievance because defendants have utilized the filing date as the date of the grievance.

[11] The court notes that the misbehavior report, which according to the disposition, would have been dated September 4, 2009, was not included in defendant Caron's Exhibit B as one of the misbehavior reports that she issued.  The misbehavior reports in Exhibit B are arranged chronologically.  The dates on the reports go from August 27, 2009 to September 9, 2009. (Dkt. No. 100-3 at 10-11).

[12] Plaintiff states that defendant Ranieri was the hearing officer, responsible for at least three of the guilty findings, subsequent to Officer Laramay's determination. (AC at p.10).  Plaintiff states that defendant Ranieri "personally disbelieves these proving irrefutable 'same occurrence' set of adjudicated facts and thrice (3) vindictively imposes a 'punative [sic] dietary loaf." (*Id.*)

sentenced to the "Food Loaf"[13] for violating the correspondence restriction and defendant Caron's order to stop writing to Ms. McDonald.  He claims that he was sentenced to a total of 61 days of this food restriction, that he went on a hunger strike in order to avoid eating the loaf, and that this sanction amounted to unusual punishment in violation of the Eighth Amendment.  At first, it does not appear that plaintiff is making any claim about Special Housing Unit (SHU) sanctions, although in the amended complaint, he states that he asked defendants Fischer, Bellnier, Lira, and Ranieri to "'please stop psychologically humiliating [plaintiff]' with insurmountable S.H.U. sanctions."[14]  (AC at p.9).  The rest of the sentence does not relate to SHU sanctions, but refers to the District Attorney of Franklin County arresting and prosecuting someone for aggravated harassment. (AC at pp.9-10).  It is unclear from the amended complaint why plaintiff is referring to the District Attorney.

## II.   Legal Standards

### A.   Motion to Dismiss

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "'plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, ___, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not

---

[13] Plaintiff refers to the Food Loaf as a "horrific sanction." (AC at p.10).

[14] At different times in his more recent papers, plaintiff does complain about excessive SHU time, allegedly totaling more than 776 days. (*See* Pl.'s Mem. of Law at 3; Dkt. No. 106).

6

suffice. *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555).  Plaintiff's factual allegations must also be sufficient to give the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp.*, 550 U.S. at 555 (citation omitted).

When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 71 (2d Cir. 1995).  The court must heed its particular obligation to treat *pro se* pleadings with liberality.  *Phillips v. Girdich*, 408 F.3d 124, 128 (2d Cir. 2005); *Tapia-Ortiz v. Doe*, 171 F.3d 150, 152 (2d Cir. 1999) (*per curiam*).

In deciding a motion to dismiss, the court may review documents integral to the complaint upon which the plaintiff relied in drafting his pleadings, as well as any documents attached to the complaint as exhibits and any statements or documents incorporated into the complaint by reference.  *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d at 72 (the court may take into consideration documents referenced in or attached to the complaint in deciding a motion to dismiss, without converting the proceeding to one for summary judgment).

### B.   Summary Judgment

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56; *Salahuddin v. Goord*, 467 F.3d 263,

272-73 (2d Cir. 2006).  "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).  It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment.  *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir.1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial.  *Salahuddin v. Goord*, 467 F.3d at 273.  In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant.  *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Salahuddin v. Goord*, 467 F.3d at 272.  As stated above, "in a pro se case, the court must view the submissions by a more lenient standard than that accorded to "formal pleadings drafted by lawyers."  *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (citing, *inter alia*, *Burgos v. Hopkins*, 14 F.3d 787 at 790 (a court is to read a pro se party's "supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest")).

"However, a pro se party's "bald assertion," completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (citing *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir.1991)).

In this case, defendants have addressed their motion for summary judgment to the issue of exhaustion of administrative remedies, while moving to dismiss on all substantive claims. (Dkt. No. 100-5 at 3).  The grievance documents that are attached to defendants' papers also clarify the facts surrounding plaintiff's other claims.  The court notes that plaintiff has responded as if the motion for summary judgment applies to the defendants' entire argument.  Plaintiff has attached a multitude of exhibits to his papers, and the defendants have addressed plaintiff's arguments.  The exhibits submitted by plaintiff actually slightly clarify his claims, thus, the court will consider these exhibits and plaintiff's arguments to the extent that they clarify matters to which plaintiff refers in the amended complaint.[15]

## III.  **Exhaustion of Administrative Remedies**

The Prison Litigation Reform Act, (PLRA), 42 U.S.C. §1997e(a), requires an inmate to exhaust all available administrative remedies prior to bringing a federal action.  This requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes and regardless of the subject

---

[15] Although generally, the court may not look outside the pleadings on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the mandate to read pro se papers liberally makes it appropriate to consider plaintiff's additional materials, including his opposition memorandum. *See Rivera v. Selsky*, No. 9:5:05-CV-0967, 2007 WL 956998, at *1 n.2 (N.D.N.Y. Jan. 5, 2007) (citations omitted).

matter of the claim. *See e.g. Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004). Inmates must exhaust their administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *Id.* at 675. The failure to exhaust is an affirmative defense that must be raised by the defendants. *Scott v. Del Signore*, No. 02-CV-29, 2005 WL 425473, at *4 (W.D.N.Y. Feb. 18, 2005) (citing *inter alia Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004)).  As an affirmative defense, it is the defendants' burden to establish that plaintiff failed to meet the exhaustion requirements. *Id.* at *12-13 (citing *Giano,* 380 F.3d at 675).

In *Jones v. Bock*, 549 U.S. 199, 218-19 (2007), the Supreme Court held that in order to properly exhaust an inmate's administrative remedies, he must complete the administrative review process in accordance with the applicable state rules. *Id.* (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)).  In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court. 548 U.S. at 90-103.  In *Woodford*, the Court concluded that the inmates did not properly exhaust their administrative remedies when their grievances were dismissed because the inmates had missed the deadlines set forth in the grievance procedure. *Id.* at 93.

The grievance procedure in New York is a three-tiered process.  The inmate must first file a grievance with the Inmate Grievance Resolution Committee (IGRC). N.Y. COMP. CODES R. & REGS., tit. 7 §§ 701.5(a)(1) and (b).  An adverse decision of the IGRC may be appealed to the Superintendent of the Facility. *Id*. § 701.5(c).

Adverse decisions at the Superintendent's level may be appealed to the Central Office Review Committee (CORC). *Id*. § 701.5(d).  The court also notes that the regulations governing the Inmate Grievance Program encourage the inmate to "resolve his/her complaints through the guidance and counseling unit, the program area directly affected, or other existing channels (informal or formal) prior to submitting a grievance." *Id.* § 701.3(a) (Inmate's Responsibility).

At the same time that the Second Circuit decided *Giano*, it also decided four other related cases, clarifying the law in the Second Circuit regarding the PLRA's exhaustion requirement and specifying various instances in which the requirement could be waived or excused. *See Hemphill v. State of New York*, 380 F.3d 680 (2d Cir. 2004) (remanding case to determine if defendant's alleged threats constituted "special circumstances" justified plaintiff's failure to exhaust); *Abney v. McGinnis*, 380 F.3d 663 (2d Cir. 2004) (whether failure to exhaust may be justified because plaintiff obtained favorable rulings on his grievances, but the relief that he was supposed to obtain was never forthcoming); *Johnson v. Testman*, 380 F.3d 691 (2d Cir. 2004) (whether including claims in a disciplinary appeal may suffice for the exhaustion requirement); *Ortiz v. McBride*, 380 F.3d 649 (2d Cir. 2004) (complete dismissal is not required when plaintiff brings both exhausted and unexhausted civil rights claims).

Pursuant to these cases, the Second Circuit developed a "three part inquiry" to determine whether an inmate fulfilled the PLRA exhaustion requirement. *See Brownell v. Krom*, 446 F.3d 305, 311-12 (2d Cir. 2006) (citing *Hemphill*, 380 F.3d at

11

686).  The inquiry asks (1) whether the administrative remedies were available to the inmate; (2) whether defendants' own actions inhibiting exhaustion estops them from raising the defense; and (3) whether special circumstances justify the inmate's failure to comply with the exhaustion requirement. *Id.*

Even after *Woodford*, courts in this circuit have continued to assume that there are exceptions to the exhaustion requirement, particularly where defendants' conduct is such that they will be estopped from asserting the defense. *See Smart v. Goord*, 04 Civ. 8850, 2008 WL 591230, at *3 (S.D.N.Y. March 3, 2008) (citing *Ziemba v. Wezner*, 366 F.3d 161, 162 (2d Cir. 2004) (plaintiff claimed, *inter alia*, that prison officials beat him, threatened him, and denied him grievance forms)).

In *Macias v. Zenk*, 495 F.3d 37 (2d Cir. 2007), the Second Circuit cited *Woodford*, and also considered whether the defendants' actions would have estopped them from asserting the defense of non-exhaustion.  In *Davis v. State of New York*, the Second Circuit continued to utilize this three-part test to determine whether a plaintiff properly exhausted his remedies.[16] *Davis v. State of New York*, 311 F. App'x 397, 399 (2d Cir. 2009).  Most recently, in *Amador v. Andrews*, 655 F.3d 89, 102-103 (2d Cir.

---

[16] This court also notes that, based upon the concurring opinion in *Woodford*, it appears that the Second Circuit decisions have **not** been overruled in that respect.  In his concurring opinion in *Woodford*, Justice Breyer specifically noted that two circuits, the **Second** Circuit and the Third Circuit that have interpreted the PLRA "in a manner similar to that which the [Supreme] Court today adopts [in *Woodford*] have concluded that the PLRA's proper exhaustion requirement is not absolute." *Woodford*, 548 U.S. at 104 (citing *Spruill v. Gillis*, 372 F.3d 218, 232 (3d Cir. 2004); *Giano v. Goord*, 380 F.3d 670, 677 (2d Cir. 2004)) (Breyer, J. concurring).  Justice Breyer then stated that on remand, the lower court should "similarly" consider any claims that the inmate might have concerning whether his case "falls into a **traditional exception that the statute implicitly incorporates**." *Id.* (emphasis added).  This statement implies that there are still exceptions that a court may consider.

2011), the Second Circuit again declined to reach the issue "concluding that, even under pre-*Woodford* case law [plaintiff] failed to establish that the defendants are estopped from raising exhaustion as a defense or that special circumstances excuse her failure to exhaust."  The same is true in this case.

### B.    Application

In this case, defendants argue that plaintiff has failed to exhaust his claims of retaliation, imposition of the food loaf sanction, his access to courts claim based on the alleged motion for appointment of counsel that never reached Judge Suddaby's chambers, and any "conspiracy" claims.  Plaintiff alleges that he filed two grievances, one on September 1, 2009 and another on September 14, 2009.  The first grievance was appealed to the CORC and, although the grievance was difficult to completely understand, it clearly challenged the negative correspondence issue and the alleged "trumped up" misbehavior reports. (White Aff.  ¶ 8 & Ex. A; Copy of Sept. 1, 2009 Grievance).

In her affidavit, Brandi White, supervisor of the Inmate Grievance Program at Upstate, states that plaintiff filed only one grievance while at Upstate, and confirms that the grievance complained about the negative correspondence issue and the allegedly false misbehavior reports. (White Aff ¶¶ 6-7; *see also* Bellamy Aff. ¶¶ 6-8, 10).  That grievance, UST-40094-09 was appealed to, and denied by, the CORC. (Bellamy Aff. ¶¶ 7-8).  The grievance appeal records have been attached to Ms. Bellamy's affidavit as Exhibit B. Thus, the only claims exhausted by plaintiff are the claim challenging the negative correspondence list and the due process claim

challenging the allegedly false misbehavior reports issued by defendant Corrections Counselor Caron.

Thus, plaintiff's mail claim has been exhausted, but his September 1, 2009 grievance made no reference to "retaliation," the food loaf (eighth amendment claim), mail that never reached the federal court, or any "conspiracy" claim. As the defendants point out, plaintiff could not have challenged the imposition of the food loaf sanction in his first grievance because the sanction was not imposed for several months after the grievance was filed. Various defendants were mentioned in the grievance, but there was no specific statement that these defendants were retaliating against plaintiff for the exercise of a constitutional right or that the defendants were conspiring with each other to deny plaintiff his rights. Thus, these claims were not exhausted. The court now turns to whether there is an exception to the exhaustion requirement in plaintiff's case.

Clearly, the grievance process was available. Plaintiff claims that he filed one other grievance, just two weeks later, on September 14, 2009, but that grievance was somehow lost or destroyed, implying perhaps that the defendants' actions would estop them from asserting the defense. Even though plaintiff states that his second grievance, (Sept. 14, 2009), mysteriously disappeared, the food loaf claim could not have been in that grievance either because, according to plaintiff, the food loaf sanctions were not imposed until 2010. The plaintiff's allegation that a letter, requesting counsel, addressed to Judge Suddaby "mysteriously" disappeared also could not have been included in the second grievance because the amended complaint

14

alleges that plaintiff's motion for appointment of counsel was dated March 19, 2010.[17] Thus, even if defendants had somehow lost or destroyed plaintiff's second grievance, neither the food loaf claim, nor the access-to-courts claim could have been included in the September 14, 2009 grievance, and they remain unexhausted.[18]  Plaintiff has failed to show any other special circumstances, supporting an argument that the exhaustion requirement should be excused in his case.

## IV.   **Mail Restrictions**

An inmate has the First Amendment right to the free flow of incoming and outgoing mail. *Johnson v. Goord*, 445 F.3d 532, 534 (2d Cir. 2006).  Regulations limiting the right to send and receive mail are valid if "reasonably related to legitimate penological interests." *Id.* (citing *Rodriguez v. James*, 823 F.2d 8, 12 (2d Cir. 1987) (quoting *Turner v. Safely*, 482 U.S. 78, 89 (1987)).  In *Turner*, the Supreme Court held that the court should determine whether the government objective is legitimate and neutral, and then whether there is a valid, rational connection between the prison

---

[17] It is unclear from the complaint whether plaintiff is claiming that the motion for appointment of counsel addressed to Judge Suddaby was lost or whether plaintiff is still talking about the grievance that disappeared.  A review of the docket sheet in this action shows that plaintiff's March 19, 2010 motion for appointment of counsel was filed on March 22, 2010 (Dkt. No. 11) and was denied without prejudice on April 1, 2010. (Dkt. No. 13).  Clearly, there was no delay in sending, filing, or deciding plaintiff's motion.  Thus, to the extent that these statements by plaintiff can be interpreted as an "access to courts" claim, it is unexhausted, and to the extent that it is a claim at all, it is completely meritless.  In order to state an access to courts claim, plaintiff would have to show an "actual injury" that resulted from the defendants' conduct. *See Lewis v. Casey*, 518 U.S. 343 (1996).  The motion to which plaintiff refers was filed and decided without delay, thus, the motion for appointment of counsel was not lost, there was injury, and no denial of access to courts.

[18] While there could have been "retaliation" and "conspiracy" claims in the "mysteriously pilfered" grievance, potentially excusing the exhaustion requirement, neither claim can survive dismissal for failure to state a claim, an alternative finding that will be discussed below.

regulation or the official action and the legitimate governmental interest that justifies that action. *Turner v. Safely*, 482 U.S. at 89.  Finally, the court must determine whether there are alternative means for the inmate to exercise that constitutional right. *Id.* at 90.

In this case, plaintiff acknowledges that on May 30, 2008, while he was at Wende, he was served with a "negative correspondence/telephone list" by Corrections Counselor, John McGregor. (Dkt. No. 106-2 at ¶ 1; Pl.s' Statement of Material Facts). The negative correspondence list contained the name "Ms. Vickie McDonald." (Caron Aff. Ex. A; Dkt. No. 100-3 at 4).  Plaintiff signed for this document, and the document clearly states that Ms. McDonald "contacted [the] facility and requested that you not be permitted to mail correspondence or make telephone calls to him/her." (*Id.*) Defendant Caron began filing misbehavior reports against plaintiff in August of 2009, after he had been transferred to Upstate. (Caron Aff. Ex. B).

It is reasonable to prohibit an inmate from corresponding with an individual who does not wish to correspond with the inmate.  Plaintiff does not take issue with the rule.  In some documents, he claims that Ms. McDonald never contacted the facility to request that her name be placed on the negative correspondence list, and in his more recent submissions, he refers to a "master imposter," indicating that someone may have contacted the facility, but it was not Ms. McDonald.  The misbehavior reports authored by defendant Caron state that in June of 2009, she spoke with Ms. McDonald who "again" requested that plaintiff be prohibited from corresponding with her. (Caron Aff. Ex. 3; Dkt. No. 100-3 at 6-18).  The misbehavior reports state that

16

defendant Caron issued a direct order to plaintiff, to stop writing to Ms. McDonald, but that plaintiff insisted that he would continue to write to her.[19] (*Id.*

Plaintiff claims that these misbehavior reports are false.  False allegations alone do not rise to the level of a constitutional violation. *Freeman v. Rideout*, 808 F.2d 949, 952-53 (2d Cir. 1986), *rehearing denied*, 826 F.2d 194 (2d Cir. 1987), *cert. denied*, 485 U.S. 978 (1988).  It is true, however, that a false misbehavior report filed in retaliation **for the exercise of a constitutional right** is actionable as a substantive due process violation. *See Franco v. Kelly*, 854 F.2d 584, 588-90 (2d Cir. 1988). Although plaintiff has a constitutional right to the free flow of mail, the right is not limitless, and he has no right to correspond with a person who does not wish to correspond with him.  This limitation is reasonable and is related to the legitimate penological interest of maintaining security.  Thus, plaintiff was not exercising a constitutional right when he was attempting to communicate with someone who had requested that he be prohibited from doing so.

The Standards of Inmate Behavior, Rule 107.11 provides that inmates shall not harass "an employee or any other person verbally or in writing."  Prohibited conduct includes communicating with individuals on the inmate's negative correspondence list. N.Y. Comp. Codes R. & Regs., tit. 7, § 270.2 (B)(8)(ii).  Plaintiff was found guilty of violating Rules 107.11 and 180.11 (facility correspondence rule).  Plaintiff

---

[19] Plaintiff does not deny continuing this behavior.  He argues that the negative correspondence list is either forged or somehow invalid and states, among other things, that defendants should have investigated his allegations properly.  The failure to investigate claim is discussed below.

did not argue at the administrative level, and does not argue now, that he did not

violate the rule, he claims that (1) Vickie McDonald never called the facility, and thus,

the negative correspondence list was "forged" or false (AC at p.10)[20]; and (2) a

"master impostor" must have called the facility to complain about the

correspondence.[21]   In essence, plaintiff complains that the defendants did not properly

investigate his allegations about the validity of the negative correspondence list.[22]

---

[20] In the amended complaint, plaintiff states "not only is the NEGATIVE CORRESPONDENCE FORM filled out with 'planned connivance' unbeknown to I [sic] but that my beautiful wife 'VICKIE' never once nor at all spoke to 'JOHN MCGREGOR' or for here, 'MS.T.L. CARON." (AC at p.10).  Plaintiff made the same argument in his September 1, 2009 grievance.  He stated that Vickie "never once or at all 'in the lowest or highest of tides' contacted any civilian correctional staff in the sat upon [sic] range of 27 May 2008 through 30 May 2008, let alone personally spoke with 'MS. T. CARON' during the months of June 2009 and/or July 2009 to 'convincingly insinuate' a 'garden variety alarm or otherwise purview of negative correspondence." (White Aff. Ex. A; Dkt. No. 100-4 at 8).  In plaintiff's statement of material facts, he states that the corrections counselor (McGregor) uttered a "deceptive lie to plaintiff's tearful face, and such a documented negative correspondence form utterance has been injurious in the range of 1,221 days. . . ." (Pl.'s Stmt. of Material Facts No. 2; Dkt. No. 106-2 at 7).  Plaintiff also states that the form is a forgery. (*Id.* No. 3; Dkt. No. 106-2 at 8).

[21] In plaintiff's Statement of Material Facts, he also states that he has "sought to be arrested, tried and/or convicted by Franklin County District Attorney 'MR. DEREK P. CHAMPAGNE, ESQ.' in order to factually prove beyond a reasonable doubt that a (D.O.C.S.) tied 'MASTER IMPOSTER' along with a (D.O.C.S.) 'INSIDE HAND' and not ever 'MY BEAUTIFUL WIFE' . . . convincingly pre arranged the 30 May 2008, 16 June 2009 and 13 July 2009 facility telephone calls." (Pl.'s Stmt. of Material Facts No. 15; Dkt. No. 106-2 at 18).  Plaintiff mentions the "master imposter" again in his Memorandum of Law. (Dkt. No. 106 at 14).  In his memorandum he repeats that a DOCS-tied "MASTER IMPOSTER" and an "INSIDE HAND" at both Wende and Upstate "pre-arranged an almost perfect plan for those specified reasons known to confidentially exist by New York State Assistant Attorney General "MS. RACHEL S. PAULEY, ESQ' and her covert cloaked Public Integrity Bureau. (*Id.* at 14).

[22] Plaintiff states that he wrote to a variety of individuals, including the Attorney General in an attempt to get this issue straightened out, to no avail.  In his memorandum of law, plaintiff states that the defendants "deliberately failed to check and double check [Ms. McDonald's alleged cell phone number] against and/or with in place (D.O.C.S.) security databases for those mentioned dates . . . ." (Pl.'s Mem. of Law; Dkt. No. 106 at 14).

To the extent that plaintiff claims a failure to investigate or an improper investigation of his grievance, he states no constitutional violation.  It is well-established that prison grievance procedures do not confer any substantive right upon an inmate requiring the procedural protections envisioned by the Fourteenth Amendment.  *Rhodes v. Hoy,* No. 9:05-CV-836, 2007 WL 1343649, at *2, *6 (N.D.N.Y. May 5, 2007) (Scullin, J.) (noting that inmates have "no constitutional right of access to the established inmate grievance program"); *Davis v. Buffardi,* No. 01CV0285, 2005 WL 1174088, at *3 (N.D.N.Y. May 4, 2005) (Magnuson, J.) ("[P]articipation in an inmate grievance process is not a constitutionally protected right."); *Torres v. Mazzuca*, 246 F. Supp. 2d 334, 342 (S.D.N.Y. 2003) (inmate does not have a protected liberty interest in having his grievances investigated at the level of thoroughness that he desires).

Accordingly, any allegations that the defendants failed to afford him an adequate investigation and/or failed to take appropriate remedial action in response to his grievances and letters of complaint, provide no basis for finding liability against them pursuant to section 1983. *Cancel v. Goord,* 00 Civ. 2042, 2001 WL 303713, at *3 (S.D.N.Y. Mar. 29, 2001) (holding that "inmate grievance procedures are not required by the Constitution" and therefore failure to ensure that grievances are properly processed does not create a claim under section 1983).  This reasoning would also apply to the extent that plaintiff is attempting to raise a separate claim regarding the alleged disappearance of his September 14, 2009 grievance.

In plaintiff's response, he states that defendant Caron wrote a fourteenth

misbehavior report that was dismissed by a different hearing officer, Officer
Laramay.[23]  Plaintiff submits the hearing officer's decision as an exhibit.  On
September 18, 2009, Officer Laramay found that there was "no documentary evidence
to affirm the identity of this civilian complainant identified as i/m Sidney's wife,
therefore the burden of proof is not substantiated." (Dkt. No. 106-3 at 6).  Plaintiff
claims that the dismissal constitutes "res judicata."  Plaintiff may be attempting to
assert "collateral estoppel."  However, collateral estoppel only bars relitigation of an
issue if the identical issue was "necessarily decided" in a prior action and is decisive
of the present action, and the party to be precluded from relitigating the issue had a
"full and fair opportunity to litigate the issue in the prior action. *In re Hyman*, 502
F.3d 61, 65 (2d Cir. 2007).

While principles of collateral estoppel have been applied to some administrative
proceedings, this occurs only when the administrative proceeding is "quasi-judicial"
in character and the party against whom collateral estoppel is being asserted had a full
and fair opportunity to contest the finding. *See ABN AMRO Bank, N.V. v. MBIA Inc.*,
17 N.Y.3d 208, 226, 928 N.Y.S.2d 647, 657 (2011) (citations omitted).  The prison
disciplinary hearing in this case does not meet any of the requirements for collateral
estoppel.  The hearing was not "quasi-judicial," and neither defendant Caron nor

---

[23] According to the documents submitted by plaintiff, defendant Caron wrote this misbehavior
report on September 4, 2009, and the hearing officer dismissed the charges as the result of a Tier II
hearing dated September 19, 2009. (Dkt. No. 106-3 at 5-6).  Defendant Caron has submitted
misbehavior reports for incidents dated August 3, 6, 11, 13, and 27, 2009; September 9, 2009;
January 7 and 22, 2010; February 22, and 25, 2010; March 8, 10, and 17, 2010. (Dkt. No. 100-3 at 6-
18).  There is no misbehavior report for an incident dated September 4, 2009.

defendant Ranieri, who apparently was the hearing officer for at least some of the hearings cited by plaintiff, had a full and fair opportunity to litigate a constitutional issue.  Thus, no collateral estoppel or res judicata would apply to the dismissal of defendant Caron's fourteenth misbehavior report.

Plaintiff cites *Matter of Gustus v. Fischer*, 64 A.D.3d 1034, 883 N.Y.S.2d 624 (3d Dep't 2009) as support for his claim that res judicata applies after a matter was adjudicated in a disciplinary hearing.  As defendants point out, *Matter of Gustus* is distinguishable from this case because the subsequent charges barred by the court related to the same incident that was dismissed in the prior disciplinary hearing. *Id.*  In *Calcaterra v. Fischer*, 73 A.D.3d 1370, 901 N.Y.S.2d 395 (3d Dep't 2010), the court distinguished *Matter of Gustus* by stating that when the subsequent charges arose from separate and distinct incidents, res judicata was not applicable. *Id.*

Plaintiff does not specifically challenge the procedures at the disciplinary hearings.  There is no question that the negative correspondence list exists, and that plaintiff was told not to correspond with Ms. McDonald.  Thus, with regard to the hearings, plaintiff could only be claiming that the evidence was "insufficient" because the list itself was issued improperly.

The constitutional standard that would be applicable to a sufficiency of evidence claim relating to a prison disciplinary hearing, (assuming a liberty interest existed),[24] is much more lenient that the standard required by the disciplinary officer at

---

[24] This court will not discuss the issue of whether plaintiff had a liberty interest under *Sandin v. Conner,* 515 U.S. 472, 486 (1995) (where the court rejected a claim that thirty days in segregated confinement was sufficient to create a liberty interest).  Some of the hearings in this case were Tier II

the hearing.  The constitutional standard for sufficiency is "some" or "a modicum" of evidence to support the determination. *Superintendent v. Hill*, 472 U.S. 445, 455 (1985) (some evidence standard).  The state law standard for sufficiency of evidence is whether the hearing officer's determination is supported by "substantial evidence."[25] *Foster v. Coughlin*, 76 N.Y.2d 964, 563 N.Y.S.2d 728, 565 N.E.2d 477 (1990).  This stricter standard is ***not*** applicable to federal due process claims, and it has been held

---

hearings in which plaintiff could only have been sentenced to up to thirty days segregated confinement.  All but one of the misbehavior report forms indicate that plaintiff was not confined as a result of the incident because he was under "prior confinement." (Caron Aff. Ex. 3; Dkt. No. 100-3 at 6-18). The only misbehavior report indicating that plaintiff was confined "as a result of the incident" was the report issued on August 6, 2009. (Id. at 7).  Plaintiff now refers to excessive amounts of SHU confinement, but the statements are so vague, and it is unclear whether any named defendant was responsible for the confinement, that the court will just assume that a liberty interest existed and decide the merits of a due process claim.

[25] This court has found at least two state court cases in which the plaintiff was challenging the sufficiency of the evidence relating to a negative correspondence list. *Goldberg v. Goord*, 11 A.D.3d 841, 783 N.Y.S.2d 157 (3d Dep't 2004); *Gibson v. Goord*, 293 A.D.2d 841, 741 N.Y.S.2d 577 (3d Dep't 2002).  In *Gibson* the court found substantial evidence to support the hearing determination when the evidence included the testimony of the corrections counselor that the petitioner had received prior notice of the negative correspondence list. *Id.*  Plaintiff claimed that the name on the list was not authorized, and the court held that "regardless of whether petitioner's claim was meritorious, he was not entitled to ignore the listing and mail the letter. 'Any holding to the contrary would simply encourage inmates to break rules as a means of addressing their grievances and invite chaos.'" *Id.* (citations omitted).  In *Goldberg*, the petitioner claimed that the documents authorizing the mail watch were fabricated and he never received notice of the negative correspondence list until the misbehavior report was issued. 11 A.D.2d at 842, 783 N.Y.S.2d at 158.  The court held that these were simply credibility issues for the hearing officer and that substantial evidence existed based upon the misbehavior report and the testimony of the corrections counselor who authored it along with the testimony of prison officials who authorized the monitoring of plaintiff's mail, other documentary evidence, and plaintiff's own admissions. *Id.*  As stated above, the substantial evidence standard is more strict that the "some" or "modicum of evidence" standard governing the constitutional issues in this court.  Regardless of plaintiff's allegation in this case that the list was forged, he does not deny writing the letters.  The negative correspondence list was issued in May of 2008, and the plaintiff's misbehavior reports indicate that defendant Caron spoke to Ms. McDonald in June and July of 2009 and confirmed that she did not wish to communicate with plaintiff.  Corrections Counselor McGregor was not even at the same facility.  It is difficult to believe that an individual at a different facility conspired or influenced defendant Caron more than a year later.

that the reversal of a disciplinary ruling on administrative appeal for insufficient evidence, does not necessarily establish a plaintiff's federal due process claim. *See Sira v. Morton*, 380 F.3d 57, 76 n.9 (2d Cir. 2004). Thus, the fact that one hearing officer found insufficient evidence does not establish a constitutional violation in any event.

Thus, defendants' confiscation of plaintiff's mail was reasonable and justified by the negative correspondence list, and plaintiff's mail claim may be dismissed. Because the negative correspondence list was valid to the extent that it formed the basis for the misbehavior reports, there was sufficient evidence to find plaintiff guilty of the violations regardless of whether the list was properly issued.[26]

## IV.   Retaliation/Conspiracy

As stated above, plaintiff did not exhaust any claims of retaliation for the exercise of a constitutional right or conspiracy to violate his constitutional rights. The court would note, however, that plaintiff does not state a claim for either retaliation or conspiracy. Conclusory allegations of retaliation and conspiracy, like those in plaintiff's complaint, are insufficient to support a viable claim of retaliation. *See, e.g., Douglas v. Smith*, No. 9:05-CV-1000, 2008 WL 434605, at *15 (N.D.N.Y. Jan. 22, 2008) (Report-Rec.), *adopted*, 2008 WL 434605, at *1 (N.D.N.Y. Feb. 14, 2008) (Kahn, J.) (retaliation)

---

[26] Regardless of the validity of the list, defendant Caron specifically told plaintiff not to correspond with Ms. McDonald, and plaintiff admits that he continued to do so. One of the charges against plaintiff in the misbehavior reports was the failure to abide by a direct order. Plaintiff admits that he failed to abide by defendant Caron's order. Inmates cannot decide which orders they will follow and which ones they will ignore based on their own evaluation of the validity of the order.

23

In order to support a claim for conspiracy pursuant to section 1983, there must be "(1) an agreement . . .; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Ciambriello v. County of Nassau,* 292 F.3d 307, 324–25 (2d Cir. 2002); *Cusamano v. Sobek,* 604 F. Supp. 2d 416, 468 (N.D.N.Y. 2009).  An agreement must be proven with specificity, as bare allegations of a conspiracy supported only by allegations of conduct easily explained as individual action are insufficient.  *See Iqbal v. Hasty,* 490 F.3d 143, 177 (2d Cir. 2007); *see also Gyadu v. Hartford Ins. Co.,* 197 F.3d 590, 591 (2d Cir. 1999).  Thus, plaintiff must "make an effort to provide some details of time and place and the alleged effects of the conspiracy . . . [including] facts to demonstrate that the defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Warren v. Fischl,* 33 F. Supp. 2d 171, 177 (E.D.N.Y. 1999) (citations omitted).  Conclusory, vague, and general allegations are insufficient to support a conspiracy claim.  *Ciambriello,* 292 F.3d at 325.

In this case, plaintiff refers to conspiracy twice in the amended complaint, but never specifies how the defendants conspired or why they might have agreed to violate his rights. (*See* AC at 8, 9).  Plaintiff states that "conspired minds" were "already at work," and states that there was a "conspiracy-related 'ongoing investigation headed by New York State Attorney General Mr. Andrew M. Cuomo via the likes of Assistant Attorney General Rachel S. Pauley and the Public Integrity Bureau'"; however, there is absolutely no indication what these statements have to do with the named defendants.  Thus, even if plaintiff had exhausted claims of conspiracy

24

or retaliation, the amended complaint may be dismissed for failure to state a claim.

   **WHEREFORE**, based on the findings above, it is

   **RECOMMENDED**, that defendants motion for summary judgment (Dkt. No. 100) be **GRANTED**, and plaintiff's retaliation (claim # 1), access to courts (claim # 2), inadequate prison conditions/food loaf sanction (claim #4 and part of # 5), and conspiracy (claim # 6) claims be **DISMISSED FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES**, pursuant to Fed. R. Civ. P. 56, and it is

   **RECOMMENDED**, that defendants' motion to dismiss (Dkt. No. 100) be **GRANTED**, and that plaintiff's correspondence (claim # 3) and due process claims (rest of claim # 5) be dismissed **FOR FAILURE TO STATE A CLAIM**, pursuant to Fed. R. Civ. P. 12(b)(6), and it is further

   **RECOMMENDED**, that the complaint be **DISMISSED IN ITS ENTIRETY.**

   Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: January 3, 2012

**Hon. Andrew T. Baxter**
**U.S. Magistrate Judge**